OCTOBER AND NOVEMBER TERM, 1883, No. 18.    OCTOBER 3, 1883.

## Riddle's Appeal.

1. The act of March 14, 1876, P. L., p. 7, in relation to the entry of satisfaction of judgments which have been fully paid by the defendant, being in derogation of the common law right of trial by jury, must be strictly construed, and therefore limited to cases of actual payment in full.

2. Where, therefore, the application of the defendant set out in substance that the judgments of the plaintiff were not fully paid, that he claimed the right to set off a debt on a book-account against them, and that the plaintiff refused to allow the set-off, it was error to grant the rule to show cause, since the application did not make out a case within the statute.

3. Where, after the appointment of a commissioner to take testimony in such a case, the attorneys for the respective parties agreed that the commissioner, "in addition to taking testimony, report the facts to the Court with his opinion," the agreement did not make him a referee or constitute him a tribunal for the disposition of the case.

Before MERCUR, C. J. ; GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. PAXSON, J., absent.

Appeal of W. H. H. Riddle from a decree of the Court of Common Pleas of *Westmoreland County*, ordering satisfaction to be entered on a certain judgment held by him against John Steel.

The facts were as follows : In 1875, the firm of Crusan, Kunkle & Co., who owned and operated a planing mill in Parnassus, Pa., borrowed $5,000 from S. L. Riddle, of Hulton, Pa. To secure this debt the firm gave S. L. Riddle two judgment notes for $2,000 and $3,000 respectively, on which judgments were entered in the Common Pleas of Westmoreland county. Subsequently the firm gave two judgment notes with John Steel on both as surety, to W. H. H. Riddle, a son of S. L. Riddle. The first was for $1,155, which was entered March 16, 1875, and the second for $1,100, which was entered April 15, 1875. The evidence showed that these two judgments were held in the name of W. H. H. Riddle, for the use of S. L. Riddle. In March, 1877, the firm of Crusan, Kunkle & Co. was declared bankrupt. On January 8, 1880, the two judgments in the name of W. H. H. Riddle were revived against John Steel, the surety, for $1,362 25 and $1,368 50 respectively. On January 8, 1880, John Steel paid $1,000 on account of the second judgment, and on March 3, 1880, $1,326 on account of both.

In 1876, W. H. H. Riddle purchased lumber and materials to the amount of $291 89 from the firm of Crusan, Kunkle & Co. to be used in a house which his father, S. L. Riddle, was building in Parnassus. This amount was charged by the firm on their books to W. H. H. Riddle.

On June 15, 1881, John Steel petitioned the court setting forth, *inter alia*, the judgments in the name of W. H. H. Riddle, and "that at the time of said confession of judgment and long prior thereto the said W. H. H. Riddle was indebted to Crusan, DeGroff and Kunkle, principal defendants in said judgments per book-account, for the sum of $291 89, which said sum the said Crusan, DeGroff and Kunkle were willing and directed should be set off as a credit on said judgment; that the said DeGroff, Kunkle & Co. went into voluntary bankruptcy, and your deponent has paid the said notes of his own proper money ; that at the time the said judgments were confessed by your deponent he claimed from Riddle, the plaintiff, a set-off for the said debt of $291 89 with interest, which plaintiff alleged was to be credited on a note held by his father, Samuel L. Riddle, against Crusan, DeGroff and Kunkle, to which your deponent was not a party ; it was agreed upon by deponent and Riddle when the judg-

ments were confessed that if the said $291 89 and interest was a proper credit against the judgment then the confessions should not prejudice the right of deponent to have it so applied thereafter; that said Riddle now refuses to allow said credit," and he asked for a rule to show cause why this amount of $291 89 should not be allowed as an off-set to the judgments against himself, and the said judgments be stricken off and marked satisfied.

The answer of W. H. H. Riddle to the rule to show cause set forth "that all money loaned to the said Crusan, Kunkle & Co., including that for which John Steel became security was the money of S. L. Riddle. That some time after all the above loans had been made, S. L. Riddle was engaged in building a dwelling-house in the borough of Parnassus, Pa., all contracts concerning which were made by W. H. H. Riddle, the respondent, for the said S. L. Riddle. That materials for said house were purchased from the said Crusan, Kunkle & Co. to the amount of $291 89, or thereabouts. That after the said debt for the materials was contracted, the respondent and S. L. Riddle had an interview with a representative of the firm of Crusan, Kunkle & Co., for the purpose of settling said bill, at which time it was distinctly understood and agreed upon that, whereas a considerable sum was due the said S. L. Riddle from the said firm as interest on the loan of $5,000, aforesaid, the amount of said bill of $291 89 should be taken and applied by the said S. L. Riddle to meet said interest and to form a credit to that extent on the loan of $5,000, which arrangement was fully carried out, and the said credit of $291 89 was applied in no other way, nor to no other indebtedness to S. L. Riddle from Crusan, Kunkle & Co., than as above stated. . . . That throughout all the transactions aforesaid, the respondent acted as agent for and on behalf of the said S. L. R., having full power and authority so to do, which fact was well known to the said firm of C., K. & Co., as was also the fact that all the money obtained by them on these various loans was the property of S. L. R., and was furnished by him."

The Court appointed a commissioner to take testimony, whereupon counsel entered into the following agreement: "23d of December, 1881, it was agreed that the commissioner, in addition to taking testimony, report the facts to the Court with his opinion." The commissioner reported the facts as above set forth, together with an

opinion that the rule should be made absolute and the judgment satisfied.

Exceptions to the report were filed by the plaintiff, which after argument, were dismissed by the Court, HUNTER, P. J., who delivered the following opinion :

"The act of 14th of March, 1880, provides for the granting of such rules, and further that should it appear to the satisfaction of the Court that the judgment has been fully paid as set forth in the application, the Court shall direct the prothonotary to mark of record the satisfaction of the judgment.    We think this act only contemplates actual payment, and not cases where there are disputes as to whether claims or accounts in independent transactions between the parties should operate as credits on the judgments e. g. this case.    No court would like to assume such responsibility.    They could frame an issue however, and call in the aid of a jury to determine the fact.

But in this case the parties created their own tribunal to find (report) the facts with an opinion thereon, and we look upon the findings of the commissioner as analogous or equivalent to the finding of an auditor whose report in this regard is conclusive and may not be set aside unless for plain mistake, said report having the weight of a verdict, and will not be disturbed except for reasons that would justify the Court in granting a new trial.    In Speakman's Appeal, 71 Pa. St. R., 25, it is said: An auditor's finding, if not supported by evidence, will be disregarded, but like a verdict must stand clearly against the weight of the evidence.    Had the question of fact in the present case been submitted to a jury, we should not have disturbed the verdict had it been the same as the finding of the commissioner.    Apart from this he had the witnesses before him, examined them at length, and had better means of coming to a conclusion than we who have only the written testimony.    We shall not disturb his finding for the reason given and the same being adverse to the plaintiff, and in support of the petitioner the rule must be made absolute.

And now, November 11, 1882, the commissioner's report is approved and the prothonotary is ordered and directed to mark of record the said judgment satisfied, and that the plaintiff in said judgment pay the costs of this proceeding."

The plaintiff thereupon took this appeal, assigning for errors the findings of the commissioner and the decree of the Court.

*W. H. H. Riddle* for the appellant.

It was the duty of the Court below to have sustained the exceptions, for which action Milligan's Appeal, 1 Outerbridge, 525; Hindman's Appeal, 4 Norris, 466; Moyer's Appeal, 27 P. F. Smith, 482; Phillip's Appeal, 18 P. F. Smith, 130, furnish ample authority where the principle that a master's or an auditor's report will be set aside when not in accordance with proofs before him is clearly settled.

It is a question whether this kind of case should be referred to a master.. Did the Legislature intend, under the act on which these proceedings are based, that owners of judgments should be submitted to costs' and commissioners' fees to settle controversies that belong to another and less expensive kind of litigation? If attempts had ·been made. to enforce collection by execution on these judgments in controversy, some justice might attach to the decree of the Court below in imposing the costs of such a proceeding on the plaintiff in the judgments.

*Jacob Turney* attorney for appellee.

If the submission of 23rd of December, 1881, was intended by the parties as a final reference of this case, the report of the referee is conclusive, whether his conclusions were right or wrong. That it was so intended there can be little doubt. The commissioner was appointed by the Court "to take testimony." The parties agreed that "in addition to taking testimony," he "report the facts to the Court with his opinion." It was a tribunal of their own selection. The commissioner so understood it, when he says: "The question of appropriation might have been referred to a jury, but the counsel for the respective parties have referred the whole matter to the commissioner." It was also so understood by the Court below—nor is the power of the commissioner in the premises questioned, in the exceptions to his report, or in the argument of appellant. ·

The parties had an undoubted right to agree to such a reference: Reading Industrial Co. *v.* Graeff, 14 Smith, 395.

And after contesting before the commissioner and Court they cannot object: Henneigh *v.* Kramer, 14 Wright, 530; Christman *v.* Moran, 9 Barr, 487.

The act of submission implies that the parties agree to be bound: McManus *v.* McCulloch, 6 Watts, 360; Bowen *v.* Cooper, 7 Watts, 311.

No set form of words or technical phrases are required

to make a binding reference: Wilson *v.* Getty, 7 P. F. Smith, 266.

NOVEMBER 12, 1883.—The opinion of the Court was delivered by TRUNKEY, J.

The power vested in the courts by the act of March 14, 1876, P. L., 7, in relation to the entry of satisfaction of judgments which have been fully paid by the defendant being in derogation of trial by jury must be strictly construed, and, therefore, limited to cases of actual payment in full.

To hold that everything which could be given in evidence under the plea of payment in the trial of a pending suit shall be treated as actual payment after judgment, would be a wide departure from the letter and spirit of the act: Felt *v.* Cook, 95 Pa. St., 247.

The act is intended only for cases where it is clear that the judgment has been paid to give a summary remedy where the facts are undisputed. It does not apply when there is a substantial dispute about the facts: Horton *v.* Hopf, 4 W. N. C., 381.

In the application of the defendant he set out that the plaintiff's judgments were not fully paid, that he claimed the right to set-off a debt upon book-account, and that the plaintiff refused to allow the set-off. The plaintiff's answer to the rule to show cause stated his reasons for that refusal, and prayed the Court to discharge the rule.

But the Court appointed a commissioner to take testimony, and afterward the attorneys "agreed that the commissioner, in addition to taking testimony, report the facts to the Court with his opinion."

Upon the facts set forth in the application, it was error to grant the rule to show cause. Taken as true they made a case not within the operation of the statute.

When the answer was filed the rule ought to have been discharged; but instead, the Court appointed a commissioner to take testimony. It does not appear that the parties consented to such appointment, or to a reference. They agreed that the commissioner might also report the facts with his opinion; not that he should determine whether a book-account should be set off against the plaintiff's judgment.

They might have made an agreement that he should act as arbitrator or referee; no set form of words or technical phrases were requisite for the making of it, but such words or acts were requisite as would clearly show a submission.

[Snyder Chapel *v.* Baer.]

From the commencement of the proceeding it affirmatively appeared that there was no case for the appointment of a commissioner, and that the plaintiff refused to allow the defendant's claim.   Then, it ought not to be inferred from his agreement respecting the commissioner's report that the plaintiff submitted the dispute to a referee.

It mattered not to him whether the commissioner or the Court found the facts from the testimony, for neither had power to determine the controversy under the act of 1876.

The learned judge of the Common Pleas rightly concluded that this case was not within the intendment of the act, but we think he erred in ruling that the parties created their own tribunal for disposition of the case, and therefore ordering satisfaction of the judgment to be entered.

Decree reversed, application dismissed, and appellee to pay the costs.